Timothy **MURRAY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 06–92–00138–CR.

Court of Appeals of Texas,
Texarkana.

Aug. 24, 1993.

Discretionary Review Refused
Dec. 15, 1993.

**50**

Richard N. Dodson, Texarkana, for appellant.

Leon Pesek, Jr., Dist. Atty., Texarkana, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

### OPINION

CORNELIUS, Chief Justice.

A jury convicted Timothy Murray of murder and set his punishment at fifty-five years' imprisonment and a $7,000.00 fine. Murray appeals, contending that the trial court erred by excusing a prospective juror during voir dire and by overruling his *Batson* motion; by allowing prejudicial argument by the prosecutor at the punishment stage of the trial; and by allowing argument about extraneous conduct. He also alleges error because the court refused his requested jury charges, denied his motion for mistrial after the State raised evidence of extraneous conduct, and failed to grant a mistrial when the prosecutor allegedly injected his personal opinion about Murray's guilt. We overrule all these contentions and affirm the judgment.

According to the State's evidence, Murray shot Lori Crouse after she tried to exchange fake crack cocaine for genuine cocaine during a drug purchase. Crouse and Ray Cockrell had been smoking crack cocaine. They left her home to drive to Stevens Courts so she could "rip some rocks" by exchanging melted wax formed into the shape of cocaine rocks for real cocaine. They arrived at Stevens Courts, and four men approached the car. When Crouse asked them about buying cocaine, she was given five rocks of cocaine. She then turned toward Cockrell, who was driving the car, made a switch, and handed fake rocks of cocaine back through the car window. At that time, one of the men shot her at pointblank range. The bullet went through her right arm and into her chest. She was admitted to Wadley Regional Medical Center at 1:40 a.m. and died at 3:00 a.m. due to massive blood loss.

We first address Murray's claim of error at voir dire. He argues that the trial court erred by excusing a venireman on the court's own motion. When the prosecutor was questioning the panel, James Spencer asked permission to approach the bench. He told the judge that he knew several of the people involved, lived in the area where the shooting took place, and knew four of the witnesses. The following colloquy then occurred:

JUDGE PEEK: Let me ask you this, Mr. Spencer. Now, I know that you're trying to be fair, but do you think that by the virtue of the fact that you know some of these people, that you live with them out there in that neighborhood, do you think that that might have some influence on you, if nothing more than just sort of a compelling influence on you in your decision making ability?

MR. SPENCER: It might have—it might would affect things. I don't know.

[DEFENSE COUNSEL:] Mr. Spencer, you said that you don't know Tim Murray, but you know some of the witnesses that the State is going to call?

MR. SPENCER: Yes.

. . . .

JUDGE PEEK: ... I think we probably had better excuse Mr. Spencer unless one of y'all have an objection to that.

[PROSECUTOR:] The State doesn't if it's going to cause him that much concern.

JUDGE PEEK: I think what he's saying, Dick, is that he'd try to be fair, but he's going to be under pressure living in that neighborhood, and that might—.

[DEFENSE COUNSEL:] That's fine.

The judge sent Spencer back to his seat until the end of selection, at which point he told him he would be excused. Immediately after Spencer returned to his seat, defense counsel privately addressed the judge and objected to the excusal. The judge pointed out that defense counsel had already agreed to his removal, but counsel argued that he failed to object to Spencer's excusal only because he did not want to be prejudiced by appearing to force the reluctant Spencer to serve on the jury.

Murray contends that it was improper for the trial court to excuse the panel member without a request from counsel. He points out that Spencer's problems did not disqualify him and that the court should not have excused him in the absence of such an absolute disqualification.

■■ The action of the trial court did not involve a challenge for cause under TEX.CODE CRIM.PROC.ANN. art. 35.16 (Vernon 1989 & Supp.1993). Instead, it was an excusal pursuant to TEX.CODE CRIM.PROC.ANN. art. 35.03, § 1 (Vernon 1989).[1] In *Johnson v. State*, 773 S.W.2d 322, 330 (Tex.Crim.App.1989), the Court of Criminal Appeals discussed the distinction between a challenge for cause and an excusal. Appellate review of a court's excusal of a panel member focuses on whether the court's action constituted an abuse of discretion. Excusal is always a matter between the juror and the trial court, so any action in that regard will necessarily be without instigation by counsel. Thus, the fact that an excusal is effected sua sponte is not error.

We now consider the propriety of the excusal in an abuse-of-discretion context. In *Butler v. State*, 830 S.W.2d 125, 131–32 (Tex. Crim.App.1992), the Court of Criminal Appeals held that the excusal of a venire member who was preoccupied about losing wages was not an abuse of discretion. That case also refers to other adequate excuses, such as acceptance of new employment by a venire member in a different city and difficulty by a prospective juror because, in the event of a long trial, she would not be able to care for her ten-year-old grandson.

■■ Murray argues that the excusal of Spencer equates to allowing a challenge for cause at the sole behest of the trial court and that the court should have limited itself to providing excusal for personal reasons that are not grounds for disqualification. This argument is not supported by the language of the statute. Article 35.03, § 1 contains no such limitation, but provides for excusal at the discretion of the court whenever the trial court deems it sufficient. If Article 35.03 was intended to cover only excuses not amounting to grounds for challenge for cause, the Legislature could have so provided. We are not willing to graft onto the statute language the Legislature omitted. If Article 35.03, § 1 overlaps Article 35.16, the Legislature, not the courts, should resolve the matter. Moreover, we note that excusal has been approved for reasons which would have disqualified a juror, and the grounds for disqualification include at least one that has been traditionally used as a basis for excusal, i.e., health reasons. *See* TEX.CODE CRIM. PROC.ANN. art. 35.16; *Berry Property Management v. Blisky*, 850 S.W.2d 644 (Tex. App.—Corpus Christi 1993, n.w.h.). Thus, we decline to hold that excusal may be used only when the venire member's situation amounts to something less than grounds for challenge. Additionally, Murray did not timely object to the court's action and initially agreed to it. Nor has he demonstrated harm by showing, at the conclusion of voir dire, that he had a legitimate objection to the jury chosen, as is required when the excused panel member is subject to challenge for cause. *See Warren v. State*, 768 S.W.2d 300 (Tex.Crim.App.1989); *Goodman v. State*, 701

---

1. TEX.CODE CRIM.PROC.ANN. art. 35.03 (Vernon 1989) provides:

    Sec. 1. Except as provided by Sections 2 and 3 of this article, the court shall then hear and determine excuses offered for not serving as a juror, and if the court deems the excuse sufficient, the court shall discharge the juror or postpone the juror's service to a date specified by the court.

S.W.2d 850 (Tex.Crim.App.1985); *Alvarado v. State*, 822 S.W.2d 236 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd).

■ Spencer's discomfort about hearing the case, the pressure he might get from neighbors and residents of the area where the shooting occurred, and his relationship with some of the witnesses are adequate reasons for excusal. The court's action was not an abuse of discretion.

Murray also contends that the prosecutor peremptorily struck a prospective juror for racial reasons, in violation of TEX.CODE CRIM. PROC.ANN. art. 35.261 (Vernon 1989), and the holding in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

■ The trial court found that the State offered race-neutral reasons for peremptorily striking the juror. We must accept that finding unless we determine that it is clearly erroneous. *Whitsey v. State*, 796 S.W.2d 707 (Tex.Crim.App.1989) (opinion on motion for rehearing). Under the clearly erroneous standard, we accept the trial court's appraisal of the evidence if it is plausible in light of the record viewed in its entirety. Moreover, because a determination of purposeful discrimination usually depends on an assessment of the credibility of the witnesses and the content of the explanation and all other relevant circumstances, the trial court's determination is entitled to great deference. *Alexander v. State*, No. 70,882, 1993 WL 129625 (Tex.Crim.App. April 28, 1993); *Tennard v. State*, 802 S.W.2d 678 (Tex.Crim.App. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991).

■ Murray complains about the exclusion of a single juror, Reginald Pree. The prosecutor stated that he struck Pree because his age was very close to Murray's and because his brother had been in trouble with the law. The prosecutor believed that the combination of those two factors might cause the venire member to be sympathetic toward Murray. A family relationship with persons accused or convicted of crimes is an adequate race-neutral reason to strike a panel member. *Lewis v. State*, 775 S.W.2d 13 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd); *Munson v.*

*State*, 774 S.W.2d 778 (Tex.App.—El Paso 1989, no pet.).

The prosecutor also stated that he did not want jurors who were about the same age as Murray. Murray was twenty years old. Pree was twenty-six years old, had been employed by Day & Zimmermann for eight years, and was single.

Murray correctly argues that other venire members accepted by the State had some of the same characteristics as Reginald Pree. A white male who served on the jury, Brian Crawford, was twenty-seven years old and single. Also, the State accepted an older white female, Melody White, who told the court that she had a brother in prison for what she described as "this very same thing."

■ Although racial bias cannot be automatically imputed in every situation where one of the State's reasons for using a peremptory challenge would technically apply to another member of the venire the State found to be acceptable, it can be imputed when there is disparate treatment of venire members as to the sole reason or primary reasons stated for the exercise of the peremptory challenge. *Esteves v. State*, 849 S.W.2d 822 (Tex.Crim.App.1993).

■ The prosecutor stated that it was the combination of characteristics that caused him to strike Pree. The trial court found this explanation credible. Disparate treatment should not automatically be imputed in such a situation. *Cantu v. State*, 842 S.W.2d 667 (Tex.Crim.App.1992). We do not find the trial court's action in accepting the prosecutor's explanations clearly erroneous.

■ Murray next asserts that the trial court erred by denying his motion for mistrial after the State elicited evidence of an extraneous offense. The complaint is based upon the following discussion:

Q  Do you know him [Timothy Murray] on sight when you see him? Do you know who he is?

A  Yes.

Q  When you got—when that car pulled up what happened at the car?

A  Well, they—you know—they were selling drugs at the car.

Q How do you know that?

A *Because Tim Murray is a drug dealer.*

(Emphasis added.) When defense counsel objected, the court sustained the objection and instructed the jury not to consider the answer. Murray's motion for mistrial was denied. Thereafter, the prosecutor told the witness:

> [L]et me ask you not to characterize the actions of any particular person as to what type of person they are or not. Okay? Can you do that, please?

Defense counsel again objected and asked for an instruction, which he received. The court denied his renewed motion for mistrial.

Murray argues that the statement was so prejudicial that the court's instruction could not cure it. Ordinarily, a prompt instruction to disregard improperly admitted testimony will cure any error. *Fuller v. State,* 827 S.W.2d 919 (Tex.Crim.App.1992); *Tennard v. State,* 802 S.W.2d at 685. There are exceptions to the rule, as when the evidence is clearly calculated to inflame the minds of the jurors and is of such character that it is impossible to withdraw the impression produced on their minds. *Waldo v. State,* 746 S.W.2d 750 (Tex.Crim.App.1988). Since the offense here obviously occurred during an attempted drug sale, we do not find the evidence so prejudicial that it could not be cured by instruction.

■ Murray also contends that the trial court erred by admitting evidence about his burglary conviction when the State had not disclosed evidence of the conviction to his counsel. Murray argues that his discovery motion requesting all information about arrest records and convictions required disclosure by the State. As in most situations, this argument would only be valid if the State violated a ruling of the court. No such ruling appears in the record. To preserve his complaint for our review, Murray must have obtained a ruling on the motion. TEX. R.APP.P. 52(a). In the absence of such a ruling, no error is shown.

■ Murray next contends that the trial court erred in denying his requested jury charge on the lesser included offense of ag-gravated assault. A defendant is entitled to a charge on a lesser included offense if (1) the lesser offense is included within the proof necessary to establish the offense charged, and (2) there is some evidence that if the defendant is guilty of any offense, he is guilty only of the lesser offense. *Dowden v. State,* 758 S.W.2d 264, 268 (Tex.Crim.App.1988); *Royster v. State,* 622 S.W.2d 442, 446 (Tex. Crim.App. [Panel Op.] 1981); *Holmes v. State,* 830 S.W.2d 263, 266 (Tex.App.—Texarkana 1992, no pet.).

■ The evidence did not raise an issue as to the lesser included offense of aggravated assault. Murray took the stand and testified in his own behalf. The only defense he raised, either personally or by other witnesses, was alibi. He steadfastly maintained that he was not present when Crouse was shot, but that he was passing by the scene of the murder and saw someone else shoot her.

Murray argues that the State's witnesses could not establish that he intentionally and knowingly caused Crouse's death. He contends that testimony that he fired at the car does not equate to testimony that he fired into Lori Crouse with the requisite intent to take her life. He thus argues that there was some evidence raising the issue of lack of intent to cause her death.

■ A person acts intentionally with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. TEX.PENAL CODE ANN. § 6.03(a) (Vernon 1974). A person need not intend both conduct and result in order to have the culpable mental state for an intentional killing. A person acts knowingly when he is aware that his conduct is reasonably certain to cause the result. TEX.PENAL CODE ANN. § 6.03(b) (Vernon 1974). If, as the State's evidence showed, Murray shot pointblank into the car where Crouse was situated, his conduct was reasonably certain to cause death. There is no evidence that, in doing the act, he intended only to injure and not to kill. *See Lugo-Lugo v. State,* 650 S.W.2d 72 (Tex.Crim.App. 1983); *Martinez v. State,* 833 S.W.2d 188 (Tex.App.—Dallas 1992, pet. ref'd).

Murray next contends that the trial court erred by denying his requested jury charge on the issue of concurrent cause. *See* TEX.PENAL CODE ANN. § 6.04 (Vernon 1974).

■ An accused is entitled to an instruction on every defensive issue raised by the evidence, whether the evidence is weak or strong. *Hayes v. State*, 728 S.W.2d 804, 807 (Tex.Crim.App.1987). The defensive theory must be clearly and independently raised by the evidence in an affirmative manner. *Garza v. State*, 829 S.W.2d 291, 294 (Tex. App.—Dallas 1992, pet. ref'd); *Smith v. State*, 752 S.W.2d 121, 125 (Tex.App.—Tyler 1986, pet. ref'd). Murray argues that the driver's delay in taking Crouse to the hospital was a concurrent cause of Crouse's death because there was testimony that the shooting might have occurred as early as 10:30 p.m. and it was 1:40 a.m. before Crouse was admitted to the hospital for treatment.

The only testimony about Crouse's medical condition was provided by the forensic pathologist. She testified that the bullet went through Crouse's right lung, heart, and left lung, and lodged in the muscles on the left side of her chest. She testified that this is virtually an inevitably fatal wound and also one that would be very quickly fatal because of the massive bleeding involved. There is no evidence any shorter time in bringing Crouse to the hospital would have had any effect whatsoever on her likelihood of survival. Thus, there is no evidence that a "concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient," as is required to absolve Murray of criminal responsibility for the crime. TEX.PENAL CODE ANN. § 6.04(a). The court did not err in refusing the charge.

■ Murray next contends that the trial court erred in failing to grant his motion for mistrial after the district attorney improperly injected his personal opinion of guilt before the jury. It is improper for the prosecutor to inject his personal opinion of the guilt of a defendant into the trial. *Clayton v. State*, 502 S.W.2d 755 (Tex.Crim.App.1973).

■ Murray points to the prosecutor's statement during the punishment phase of the trial. In response to a question by the trial judge about the likely time needed to complete the case, the prosecutor said it would not take very long for them to put on *the punishment testimony* after the jury came back the next day. Murray argues that the prosecutor's statement is tantamount to stating his belief that Murray was guilty. Such a statement does not constitute error. The prosecutor may tell the jury that he expects a conviction based on the evidence, *Johnson v. State*, 698 S.W.2d 154, 166 (Tex.Crim.App.1985), and it is obvious that he expects them to render a guilty verdict. Even if the statement could be construed as an expression of the prosecutor's personal knowledge of Murray's guilt, the court's action in instructing the jury to disregard the remark was sufficient to cure any error.

Murray next complains about an argument of the prosecutor at the punishment stage of the trial. The argument was:

Now, ladies and gentlemen, the State is not here asking retribution for Lori Crouse's life. No, we're asking you to go greater, to look at a greater effort and to try to achieve something much greater. The question facing this jury is whether or not the Defendant, Timothy Murray, is someone you want walking the streets of your community. What type of person is Timothy Murray? The evidence that has been presented in this case tells you what type of person Timothy Murray is. He is a very dangerous person. What you are being asked to do is not to seek justice for Lori Crouse, but to protect society. And the best way, ladies and gentlemen, to protect your community is to give the Defendant, Timothy Murray, a substantial period of time in the state penitentiary.

■ The proper areas for jury argument are (1) a summation of the evidence, (2) reasonable deduction from the evidence, (3) answers to arguments from opposing counsel, and (4) a plea for law enforcement. *Long v. State*, 823 S.W.2d 259 (Tex.Crim.App.1991). Murray argues that the argument was improper because it referred to the expectations and demands of the community.

■ One permissible jury argument is a plea for law enforcement. *Whiting v.*

*State,* 797 S.W.2d 45, 48 (Tex.Crim.App. 1990). The prosecutor may not argue that the community or any particular segment of the community demands or expects either a guilty verdict or a particular punishment. *Cortez v. State,* 683 S.W.2d 419 (Tex.Crim. App.1984). But a proper plea for law enforcement may take many forms, one of which is to argue the relationship between the jury's verdict and the deterrence of crime in general, or this specific type of crime. *Borjan v. State,* 787 S.W.2d 53, 55 (Tex.Crim. App.1990). We have examined the portion of the argument of which Murray complains. It does not constitute an encouragement to the jury to believe that either the community or any particular part of the community expects or demands a particular punishment. Rather, it simply argues that the purpose of law enforcement generally would be served by keeping the guilty party in prison for a substantial period of time. That is not improper argument.

The judgment of the trial court is affirmed.

GRANT, Justice, dissenting.

What may appear to be a valid race neutral reason for striking a prospective juror when taken alone may be determined to be invalid if the other strikes were not consistent with this reason. The State's two primary reasons for striking black prospective juror Reginald Pree were not consistent with the failure of the State to strike white prospective jurors for which the same reasons existed.

The State's first reason for striking Pree was that Pree's brother had been convicted of a misdemeanor threat violation. This was not consistent with keeping a white juror whose brother was in the Texas Department of Corrections for a murder conviction. Especially so, in light of the fact that this jury was being chosen for a trial upon murder charges.

The second reason given by the State for striking Pree was that the prosecutor did not want jurors who are about the same age as the defendant Murray. Murray was 20 years old. Pree was 26 years old. The State, however, did not strike white prospective jurors; one, age 19; two, age 20; and two, age 27. The trial court erred in accepting the State's reasons, because these reasons are not race neutral when considered in light of the State's other strikes.

Excusal of an unqualified venire person pursuant to the statute enumerating reasons for challenges for cause is qualitatively different from one in which a qualified venire person requests, based on a personal reason, excusal from jury service. Bases for cause challenge enumerated in the statute are, as a matter of law, the only ones which a party may request that the judge rule upon to disqualify a juror, while the judge may, in accordance with statutory provisions regarding excuses, consider *any other* excusal factor with or without prompting of counsel. *Butler v. State,* 830 S.W.2d 125 (Tex.Crim. App.1992). There are numerous cases in Texas allowing the trial judge broad discretion in granting excusal pursuant to Article 35.03, but all of these cases relate to personal reasons for not serving as a juror generally and are not reasons for cause related to the case before the court. Examples include: *Narvaiz v. State,* 840 S.W.2d 415 (Tex.Crim. App.1992) (juror excused on grounds that campaign for state political office precluded the potential juror's concentration and ability to be fair); *Butler v. State,* 830 S.W.2d 125 (prospective juror concerned that she would be preoccupied with missing work); *Moody v. State,* 827 S.W.2d 875 (Tex.Crim.App.1992) (juror properly excused on the court's own motion who had an out-of-town vacation schedule); *Ellason v. State,* 815 S.W.2d 656 (Tex.Crim.App.1991) (court properly sua sponte excused venire member due to her health problems); *Johnson v. State,* 773 S.W.2d 322 (Tex.Crim.App.1989) (prospective juror excused because of child care problem); *Chambers v. State,* 568 S.W.2d 313 (Tex. Crim.App.1978), *cert. denied* 440 U.S. 928, 99 S.Ct. 1264, 59 L.Ed.2d 484 (1979) (prospective juror would have to close down his business already in financial trouble).

A trial judge should not on his or her own motion excuse a prospective juror for cause unless the juror is absolutely disqualified from serving on the jury. *Warren v. State,* 768 S.W.2d 300 (Tex.Crim.App.1989). A prospective juror is absolutely disqualified from

serving on a jury and must be excused from the panel according to TEX.CODE CRIM.PROC. ANN. art. 35.16 (Vernon 1989 & Supp.1993) if the prospective juror (1) has been convicted of a theft or any felony, (2) is under indictment or other legal accusation for theft or any felony, or (3) is insane.

Venire persons should not be dismissed for cause under the guise of Article 35.03. This rule was not intended to cover reasons that are the bases for challenges for cause, and the trial judge erred in the present case when he excused prospective juror Spencer sua sponte because his living in the community where the crime occurred could be a compelling influence on his decision-making ability. This amounts to a basis for a challenge for cause, to-wit that he had a bias or prejudice under Article 35.16(a)(9).

For these reasons, I respectfully dissent.