**Rodrick Lakirk SCOTT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–94–01132–CR.**

Court of Appeals of Texas, Dallas.

Sept. 18, 1996.

Michelle Phillips Scheef, Richardson, Robert P. Abbott, Coppell, for Appellant.

Kimberly A. Schaefer, Assistant District Attorney, Dallas, for Appellee.

Before OVARD, CHAPMAN and MORRIS, JJ.

## OPINION

MORRIS, Justice.

In this case we address the standards of review applied to claims of legal and factual insufficiency of the evidence. In particular, we examine the standard of review for claims of factual insufficiency as recently announced by the Texas Court of Criminal Appeals.

We then apply the standards to the claims of Rodrick Lakirk Scott.

Scott contends the evidence presented at his trial was both legally and factually insufficient to support his conviction for capital murder. After examining all the evidence in light of the prevailing standards of review, we conclude the evidence was sufficient to support the jury's verdict. Accordingly, we affirm the trial court's judgment.

## Standards of Review

In separate points of error, Scott argues the evidence is legally and factually insufficient to support his conviction for capital murder. His first point of error challenges the legal sufficiency of the evidence under long-standing precedent. His second point of error complains about the factual sufficiency of the evidence. When Scott appealed and brought forth his factual insufficiency claim, the court of criminal appeals had not yet announced the standard of review for a factual insufficiency point of error.

The standard of review for a challenge to the legal sufficiency of the evidence to support a conviction is well defined. In analyzing a challenge to the legal sufficiency of the evidence, we examine the evidence in the light most favorable to the verdict. *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). We consider all of the evidence whether properly or improperly admitted. *Chambers v. State*, 805 S.W.2d 459, 460 (Tex.Crim.App.1991). We then determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Turner v. State*, 805 S.W.2d 423, 427 (Tex.Crim.App.), *cert. denied*, 502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). The trier of fact is the sole judge of the witnesses' credibility and can accept or reject any or all of a witness's testimony. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985); *Hemphill v. State*, 505 S.W.2d 560, 562 (Tex.Crim.App.1974). In determining legal sufficiency, we do not examine the fact finder's weighing of the evidence, but merely determine whether there is evidence supporting the verdict. *See Clewis v. State*, 922 S.W.2d 126, 132 n. 10 (Tex.Crim.App.1996).

In contrast, the court of criminal appeals recently held for the first time in *Clewis v. State* that, in reviewing claims of *factual* insufficiency, it is the duty of the courts of appeals to examine the jury's weighing of the evidence. *Id.* at 133, 134. Specifically, the court held we must view the evidence "without the prism of 'in the light most favorable to the prosecution'" and set aside the verdict if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* at 129. The court stated its holding "harmonizes the criminal and civil jurisprudence of this State." *Id.* Indeed, the court embraced the civil standard of review for factual insufficiency claims and "adapted" it to criminal cases. *Id.* at 129, 136.

Under the long-existing civil standard of review, a claim of factual insufficiency should be sustained if the appellant shows either: "(a) the evidence is factually insufficient to support a finding of a vital fact, or (b) the finding of a vital fact is so contrary to the great weight and preponderance of the evidence as to be clearly wrong." Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 366 (1960); *see also Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Melanson v. Turner*, 436 S.W.2d 197, 198 (Tex.Civ.App.— Fort Worth 1968, no writ). Under the first prong of this standard, a verdict must be reversed if the evidence adduced in support of a vital fact, considered alone, is so uncertain, inconsistent, improbable, or unbelievable that, although constituting some evidence of probative force, it would be "clearly unjust" to allow the verdict to stand. *Calvert*, 38 Tex. L. Rev. at 366–67. Contrastingly, a verdict must be reversed under the second prong when, considering all the evidence submitted in support of *and* contrary to the existence of a vital fact, the finding of the existence of the fact is so contrary to the great weight of the evidence as to be clearly wrong and unjust. *Id.* at 367–68. Each prong is distinctly different. In adapting the

civil standard of review to criminal cases, however, the court of criminal appeals focused exclusively on the second prong.[1] *See Clewis,* 922 S.W.2d at 129, 135.

◼ In applying the second prong, we first determine what amount and character of evidence supports the finding of a vital fact. Then we determine what amount and character of evidence is contrary to the finding. These determinations result in distinct categories of evidence that must be comparatively examined or "weighed." The "weighing" process we conduct, however, functions only to answer the question of whether the trier of fact's finding of a vital fact is justified.

◼ In analyzing the trier of fact's finding of a vital fact, we must be mindful that we do not sit as a juror: we do not decide the existence or nonexistence of a vital fact; we do not decide the truth or falsity of proffered evidence; we do not judge the credibility of witnesses. Although we do not sit as a juror, under *Clewis* we are authorized to disagree with the fact finder's finding of a vital fact. *Id.* at 133. Moreover, we may disagree with a finding and reverse a verdict even though it is supported by some evidence of probative force. *Watson v. Prewitt,* 159 Tex. 305, 305, 320 S.W.2d 815, 816 (1959) (per curiam); *Cannon v. ICO Tubular Servs., Inc.,* 905 S.W.2d 380, 390 (Tex.App.—Houston [1st Dist.] 1995, no writ). We may disagree with the fact finder and reverse the verdict, however, only if we conclude the finding, though supported by some evidence, is so against the overwhelming weight of the contrary evidence that it is clearly wrong, making the verdict unjust. A verdict is "clearly wrong and unjust" if, for example, it shocks the conscience or clearly demonstrates bias. *Clewis,* 922 S.W.2d at 135 (quoting *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986)).

◼ According to the court of criminal appeals, our "weighing" of the evidence does not invade the function of the trier of fact because in performing our review we must be "appropriately deferential" so as to avoid substituting our judgment for the fact finder's. *Clewis,* 922 S.W.2d at 133. Clearly, we may not set aside a jury verdict simply because we feel a different result is more reasonable. *Id.* If reasonable minds could differ about the conclusions to be drawn from the evidence, we may not reverse the verdict. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex. 1988).

◼ To ensure that we do not usurp the role of the trier of fact, when reversing a verdict because of factual insufficiency of the evidence, we are required to detail in our opinion the evidence relevant to the issue in consideration and clearly state why the fact finder's finding is unjust. *Clewis,* 922 S.W.2d at 135; *Pool,* 715 S.W.2d at 635. Furthermore, if we conclude the fact finder's finding of a vital fact upon which the verdict is based is clearly against the great weight of the evidence, we reverse and remand the case for a new trial. *Clewis,* 922 S.W.2d at 133–34. The court of criminal appeals concluded that because we remand the case for a new trial before a new trier of fact, rather than render a judgment of acquittal, we are

---

1. Texas courts have recognized that the distinction between a point of error challenging the "sufficiency of the evidence" and a point of error contending the verdict is "against the great weight and preponderance of the evidence" has become blurred in practice. *See Gilbert v. Canter,* 500 S.W.2d 557, 559 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.); *see also Stone v. State,* 823 S.W.2d 375, 380–81 (Tex.App.—Austin 1992, pet. ref'd, untimely filed). The distinction still exists, however. *See Clewis,* 922 S.W.2d at 149 (Meyers, J., concurring). It generally has been held that the first type of sufficiency point of error is most appropriately used by the party that did not have the burden of proof on the finding being challenged. *Stone,* 823 S.W.2d at 380. In the criminal context, therefore, it is the first prong of the civil standard of review that would be most applicable to points of error challenging the findings on the elements of the offense on which the State alone has the burden of proof. In his concurring opinion in *Clewis,* Justice Meyers suggests that the first prong of the civil standard is subsumed in the sufficiency review performed under *Jackson v. Virginia. Clewis,* 922 S.W.2d at 150. But Justice Meyers does not reconcile this concept with the majority's directive not to view the evidence in a light favorable to the verdict (as we must do under *Jackson* ) when conducting a factual sufficiency review. Thus, *Clewis* is not instructive on the application of the first prong of the civil standard to criminal cases.

not substituting our judgment for that of the fact finder. *Id.* at 133.

■ Lastly, we note that we must address a legal insufficiency claim before we address a factual insufficiency claim. A conclusion that the evidence is legally insufficient precludes the need to discuss the factual sufficiency of the evidence. By contrast, a review of the factual sufficiency of the evidence "begins with the presumption that the evidence supporting the jury's verdict was legally sufficient...." *Stone*, 823 S.W.2d at 381.

With the appropriate standards of review in mind, we now address Scott's two points of error.

### Factual Background

On the evening of June 17, 1993, Tonya Kelly drove a friend's car to the restaurant where her friend worked. After parking in the restaurant parking lot, Kelly walked to a nearby convenience store. Kelly noticed two young men in the store, one of whom she later identified as Scott. Scott and the other man left the convenience store together and walked over to the restaurant. Kelly followed.

Back in the parking lot, Kelly saw that a van had pulled in next to her friend's car. Kelly saw a man, later identified as Eduardo Saldivar, get out of the van and walk to the restaurant take-out window to order some food. According to Kelly, there was a group of people, including Scott, milling around the restaurant take-out window talking about wanting some of Saldivar's food. One of the people talking to Saldivar about wanting his food was Scott's companion. Kelly got into her friend's car to listen to the radio.

Several minutes later, Kelly watched Saldivar walk toward the van with his food. Kelly stated that, as Saldivar moved between the van and the car in which she was sitting, a man came from behind the van and pointed a gun at Saldivar. Kelly stated she heard the man say, "We're cool. We're cool." She also heard the man say, "Give it to me." Saldivar began to back away and Kelly saw the man cock the gun. Kelly quickly jumped out of the car to the pavement below. Although she did not see the gun being fired, she heard three rapid gunshots seconds after she jumped from the car. After reviewing the statement she gave the police, Kelly positively identified Scott at trial as the man who pointed the gun at Saldivar and said, "Give it to me."

Across the street from the parking lot, Janet Lister and Robert Watson were sitting in a car talking. Both stated they had a clear view of the restaurant parking lot and the shooting that took place there. According to Watson, Scott walked up to their car before the shooting and talked to him. Watson knew Scott. He stated that, at that time, he had known Scott for approximately one year.

Later, as Lister was lying in Watson's lap, she heard three gunshots. After the first shot, she sat up and saw Scott pointing a gun at Saldivar. Lister then saw Saldivar fall to the ground.

In his initial statement to the police, Watson denied he saw the shooting. At trial, however, Watson testified that, like Lister, he looked up when he heard the gunshots and saw Scott pointing a gun at Saldivar. Watson further testified that the only items in Saldivar's hands when he was shot were his food and some money. Watson then saw Scott and his companion flee the parking lot. Watson stated he did not tell the police what he saw earlier because he did not want to get involved and was afraid of retribution.

At trial, Scott admitted he shot Saldivar. Scott denied, however, that he shot Saldivar while trying to rob him. Instead, Scott testified he acted in self-defense. According to Scott, his companion was attempting to take Saldivar's money, and Scott interceded to calm things down. Scott stated that Saldivar then charged him and attempted to stab him with a screwdriver. In response, Scott said he pulled his gun and fired at Saldivar. Scott denied that he cocked the gun first.

Medical examiners investigating the shooting found Saldivar lying on the ground with his food and money still in one hand. When Saldivar's body was rolled over, a screwdriver fell out of his back pocket. The cause of Saldivar's death was determined to be gun-

shot wounds to the chest and abdomen. It was also determined that, at the time he was shot, Saldivar had a blood alcohol level almost three times the legal limit for driving.

A grand jury indicted Scott for murdering Saldivar while in the course of attempting to rob him. At trial, the court denied the State's request to include an instruction on the law of parties in the jury charge. Even in the absence of this instruction, the jury convicted Scott of capital murder. This appeal ensued.

### Discussion

■ A person commits the offense of capital murder if he intentionally or knowingly causes the death of an individual in the course of committing or attempting to commit robbery. TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon 1989) (current version at TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon 1994)). In his first point of error, Scott contends the evidence is legally insufficient to support his conviction for capital murder because the State failed to prove that he attempted to rob Saldivar. Because the court's charge did not include an instruction on the law of parties, the State had the burden to show that Scott personally attempted the robbery.

A person commits the offense of robbery if, in the course of unlawfully appropriating property, and with the intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 29.02 (Vernon 1994). It is not necessary for the State to show that any property was actually stolen in order to prove that the victim was murdered in the course of a robbery. *Autry v. State*, 626 S.W.2d 758, 762–63 (Tex.Crim.App.), *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). Intent to steal may be inferred from actions or conduct. *Johnson v. State*, 541 S.W.2d 185, 187 (Tex.Crim.App.1976).

■ Scott contends the only evidence adduced to establish that he robbed Saldivar was the testimony of Tonya Kelly. Scott argues Kelly's testimony is legally insufficient because Kelly did not actually see what occurred immediately before the shooting. Kelly testified, however, that she saw Scott point the gun at Saldivar as Saldivar backed away. She then saw Scott cock the gun. Seconds later she heard three gunshots. Her testimony sufficiently shows that she saw what happened immediately before the shooting.

■ Scott further argues that Kelly's testimony is legally insufficient because she admitted she did not *see* which man said, "Give it to me." On further examination, however, Kelly positively identified Scott as the man she *heard* say, "Give it to me." The fact that Kelly did not see Scott utter the words does not render her testimony legally insufficient.

Through Kelly's testimony, the State established that Scott was in the company of people who were talking about wanting Saldivar's food. The State further established that Scott ordered Saldivar at gunpoint to give him something. All the witnesses, including Scott, testified that Scott shot Saldivar three times. None of the witnesses other than Scott saw Saldivar holding a screwdriver. Watson testified Saldivar was holding only food and money when Scott shot him. Although Scott claimed Saldivar tried to stab him with a screwdriver, the only screwdriver described in the evidence was found after it fell out of Saldivar's back pocket. Based on this evidence, a rational juror could have found the elements of capital murder beyond a reasonable doubt. *See Alexander v. State*, 820 S.W.2d 821, 824 (Tex.App.—Waco 1991, pet. ref'd). We overrule Scott's first point of error.

In arguing under his second point of error that the evidence is factually insufficient to support his conviction, Scott relies on the same alleged flaws in Kelly's testimony that we discussed in addressing his legal insufficiency point of error. Scott additionally points to his own testimony as establishing a more credible explanation for the shooting. We have examined all the evidence under the applicable standard of review for a factual sufficiency point of error. We cannot conclude the evidence produced by the State to discharge its burden of proof on each element of the charged offense is so uncertain, inconsistent, improbable, or unbelievable that

it would be clearly unjust to allow the verdict to stand. We also cannot conclude the jury's findings on the elements of capital murder, including that Scott committed or attempted to commit robbery, are against the great weight of the evidence. Because we conclude the jury's findings are supported by factually sufficient evidence, it is unnecessary for us to detail further the evidence relevant to any issue. *See Clewis,* 922 S.W.2d at 135; *see also Pool,* 715 S.W.2d at 635. We overrule Scott's second point of error.

We affirm the trial court's judgment.