86/7457



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOSE REFUGIO ZAMARRON,
Appellant

No. 05-96-00247-CR          V.

THE STATE OF TEXAS, Appellee

Appeal from the Criminal District Court
No. 3 of Dallas County, Texas. (Tr.Ct.No.
F94-43180-TJ).
Opinion delivered by Justice Roach,
Justices Kinkeade and Morris
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered December 2, 1997.

JOHN R. ROACH
JUSTICE

**Affirmed and Opinion Filed December 2, 1997**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

No. 05-96-00247-CR

---

## JOSE REFUGIO ZAMARRON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the Criminal District Court No. 3
Dallas County, Texas
Trial Court Cause No. F94-43180-TJ**

---

## O P I N I O N

Before Justices Kinkeade, Morris, and Roach[1]
Opinion By Justice Roach

A jury convicted Jose Refugio Zamarron of murder and assessed punishment at life in prison. In four points of error, appellant complains: (i) the evidence is legally and factually insufficient; (ii) the trial court allowed an improper jury argument; and (iii) the trial court improperly commented on the evidence. For the reasons set forth below, we

---

[1] Justice John R. Roach succeeds Justice Deborah G. Hankinson, a member of the original panel. Justice Roach has reviewed the briefs and record in this case.

overrule all points of error and affirm the trial court's judgment.

## FACTUAL BACKGROUND

Larry Edwards and Clint Mott worked as security guards at Club Eternity, a downtown Dallas bar frequented by young gang members. Edwards described the bar as "real, real, real bad" and said most of its problems occurred at closing and were "gang-related disputes." As the bar was closing at around 3:45 a.m. on June 17, 1994, Edwards noticed two of the club's patrons, Jovan Owens and Henry Castillo, arguing outside. Owens and Castillo got "nose-to-nose," and Edwards immediately got between them and shoved them apart. Edwards placed Owens against a van, and a second security guard, Clint Mott, held Castillo. Suddenly, shots were fired. Edwards sought safety, dragging Castillo as a "shield" to the front of the van. Edwards then saw a guy holding a gun, who appeared to be Hispanic, running toward Industrial Boulevard. Edwards shot his weapon in the air, hoping to get the man to turn around so that he could see his face. The man did not turn, however, and Edwards was not able to identify the shooter. After the assailant fled, Edwards discovered that Owens had been shot. Owens died two hours later at Parkland Memorial Hospital.

Mott's testimony was consistent with Edward's. When shots rang out, he fell to the ground. Like Edwards, Mott did not see who fired the shots, but he immediately started chasing the shooter. Edwards, realizing Mott was not armed, told Mott to stop. Mott did not see the shooter's face but could see him holding a gun as he was fleeing. When Edwards fired a shot in the air and yelled for the man to stop, the man went into

-2-

"overdrive." He did not know appellant and could not remember seeing him in the club that night.

Gilbert Cavello, Jr. testified he and a friend, Manuel Eguia, were at the bar on the night of the shooting. Gilbert was sixteen years old at the time. As the club was closing at about 3:45 a.m., an argument erupted inside the club between Castillo and Owens. Owens and two of his friends, and Castillo and his friends, Frank Ramirez and appellant, went outside. Gilbert, wanting to avoid trouble, headed to his car. Eguia followed after unsuccesfully trying to get Castillo to stop arguing. Once in his car, Gilbert watched as appellant went to another car and then ran back to the scene of the argument. Appellant wedged his way through the crowd, raised his right hand, and shot Owens. The crowd scattered, and appellant fled on foot toward Industrial Boulevard. A security guard gave chase.

Two other people, Noel Longoria and Vincent Santoya, got in Gilbert's car, and Gilbert drove off. As he was making a U-turn under the freeway, Gilbert saw somebody hiding under the Industrial Boulevard bridge. Eguia told Gilbert to stop and pick up "my homeboy." Eguia told the person to get in the car. At that point, Gilbert could not see who the person was. The man jumped in the back seat of the car. As they were headed onto the freeway, Eguia, who was seated in the front seat, turned to the man and and said, "You shot the mother fucker." At that point, Gilbert realized he stopped for appellant. Angry, he began "cussing out" Eguia. Gilbert said appellant had a gun in his lap and was "sweating real hard." Eguia said something to appellant, and appellant laughed.

Castillo, the man who was originally arguing with Owens, then pulled up and told Gilbert to follow him. Gilbert followed Castillo to Castillo's house. Everyone got out and "started like celebrating." Gilbert wanted to leave, and did about ten minutes later. Before Gilbert left, however, Castillo threatened to kill anyone who talked about what had happened. Gilbert had never seen appellant before the night of the shooting. He had no further contact with this group after that night.

Eguia, Castillo, and Longoria also testified at trial. None, however, could identify the person who shot Owens. Eguia, who was fifteen years old at the time, said he was standing on the ledge of Gilbert's car when the shots were fired. He said he did not see anyone's hand go up nor did he see the flash of a gun. Equia also denied seeing a gun in the car but said he noticed a gun laying on the trunk of Ramirez's car at Castillo's house. Two months after the shooting, however, Eguia gave police a statement. In the statement, Eguia said: "I saw [appellant] lean into Frank's car, called out to him, he ignored me, and kept walking. I saw him walk over toward Jovan and Henry, and I heard some shots. I saw him run toward Industrial." At trial, Eguia denied the statement. Eguia also denied having Gilbert pick up appellant and denied hearing any threats made at Castillo's house.

Castillo said he got into an argument with Owens as he was leaving the club, and a security guard grabbed him. A crowd gathered around them. Although he heard the gunshots, he did not see who fired them. He did not see a gun and did not recall making any threats regarding the shooting. Likewise, he said he did not remember who was at his house that night because he was drunk and did not remember shaking appellant's hand and

-4-

congratulating him. Castillo said he did not really know appellant but had been acquainted with him for about one year.

Longoria said he had been drinking heavily before the shooting. He said he was in Gilbert's car when the argument erupted. Everyone got out of the car and headed in that direction. He heard gunshots and jumped back into the car and left. He saw someone fleeing the scene but could not identify him nor could he identify the person that was picked up under the Industrial bridge. He testified that he did not know appellant and did not see him at the scene of the shooting.

Detective K.W. Beck interviewed Gilbert, Equia, Castillo, and Longoria as part of his investigation. He testified he interviewed Eguia twice. In the first interview, Eguia said he knew what happened but was afraid he would be killed if he told. In the second interview, Beck said Eguia gave him the statement implicating appellant.

The police recovered two .25-caliber cartridge casings at the scene. Although they searched under the Industrial Boulevard bridge, they did not locate a gun. Dr. Joseph Guileyardo, Dallas County chief deputy medical examiner, testified that Owens was hit by two bullets: one went though Owens's heart and the other pierced his liver and intestines. Either wound was fatal. Toxicology results showed no illegal drugs or alcohol in Owens's body.

SUFFICIENCY OF THE EVIDENCE

In his first and second points of error, appellant complains the evidence is legally and factually insufficient to support his conviction. When reviewing a challenge to the legal

sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 309 (1979); *Chambers v. State*, 866 S.W.2d 9, 15 (Tex. Crim. App. 1993), *cert. denied*, 511 U.S. 1100 (1994). This standard leaves to the fact finder the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *See Dumas v. State*, 812 S.W.2d 611, 615 (Tex. App.--Dallas 1991, pet. ref'd). The fact finder is the exclusive judge of the witnesses' credibility and the weight to be given their testimony. TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984), *cert. denied*, 474 U.S. 865 (1985); *Dumas*, 812 S.W.2d at 615. Thus, the fact finder is free to accept or reject any or all evidence presented by either side. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

When conducting a factual sufficiency review, we examine the fact finder's weighing of the evidence. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). We consider all the evidence, but we do not view it in the light most favorable to the verdict. *Id.* at 129. When performing our review, we must be "appropriately deferential" so as to avoid substituting our judgment for the fact finder's judgment. *Id.* at 133. We set aside a fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

To obtain a conviction for murder, the State had to prove appellant intentionally or knowingly caused the death of Owens. TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon

1994). In his first and second points of error, appellant complains the evidence is legally and factually insufficient to establish his identity as the gunman. Specifically, he complains that the only evidence linking him to the murder is the "dubious" testimony of Gilbert.

Gilbert testified that he saw appellant go up to a car, return to the scene of the argument, raise his arm, and shoot Owens in the body. Although Gilbert acknowledged he did not see the gun, he testified that he saw the "gunshot -- the fire of the gun. . . and then [Owens] got shot." He then watched appellant flee and picked him up minutes later hiding under the Industrial Boulevard bridge. At the time, appellant had a gun and was "sweating real hard." After appellant got in the car, Eguia turned to him and said, "You shot the mother fucker." Reviewing the evidence in the light most favorable to the verdict, we conclude a rational jury could conclude beyond a reasonable doubt that appellant intentionally or knowingly caused Owens's death.

Likewise, we conclude the evidence is factually sufficient. Although appellant complains about Gilbert's credibility, we do not sit as a thirteenth juror nor do we substitute our judgment for that of the jury when analyzing the factual sufficiency of the evidence. Rather, we must give due deference to the jury's assessment of the witnesses' credibility and its resolution of an evidentiary conflicts. After reviewing the record in this case, we cannot conclude the evidence produced by the State was so uncertain, inconsistent, improbable, or unbelievable that it would be clearly unjust to allow the verdict to stand. *See Scott,* 934 S.W.2d 396, 398 (Tex. App.--Dallas 1996, no pet.). Nor can we conclude the verdict is against the great weight of the evidence so as to be clearly wrong and unjust. *See id.*

-7-

Because the judgment is supported by legally and factually sufficient evidence, we overrule the first and second points of error.

## IMPROPER JURY ARGUMENT

In his third point of error, appellant complains the trial court committed reversible error by allowing the State, during closing argument at the guilt-innocence phase of the trial, to improperly comment on his failure to testify. The alleged improper argument was as follows:

> There is truth in what Gilbert Cavello is telling you, if you will see it, if you will listen to it. And if you think there is not, ask yourself where is the proof, where is the evidence that he is not telling you the truth.

A prosecutor violates a defendant's rights if he comments on the defendant's failure to testify. *Angel v. State*, 627 S.W.2d 424, 426 (Tex. Crim. App. 1982); *Carillo v. State*, 821 S.W.2d 697, 699 (Tex. App.--Dallas 1991), *pet. ref'd*, 826 S.W.2d 955 (Tex. Crim. App. 1992). To violate the defendant's rights, the language of the argument, viewed from the jury's perspective, "must be manifestly intended or of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify." *Patrick v. State*, 906 S.W.2d 481, 490 (Tex. Crim. App. 1995), *cert. denied*, 116 S. Ct. 1323 (1996), citing *Banks v. State*, 643 S.W.2d 129, 134-35 (Tex. Crim. App. 1982), *cert. denied*, 464 U.S. 904 (1983). A mere illusion to the defendant's failure to testify does not violate his rights. A remark that calls attention to the absence of evidence which only the defendant could supply will result in reversal; however, if the language can reasonably be construed to refer

to the defendant's failure to produce evidence other than his own testimony, the comment is not improper. *Id.*

Appellant argues that although there were other witnesses at the scene, Gilbert was the only one to testify that appellant shot Owens. Thus, appellant asserts that because only appellant and Gilbert knew whether appellant shot Owens, the prosecutor's "call for [a]ppellant to show proof that Gilbert was lying was a direct call for him to testify, as the [a]ppellant was, from the testimony, the only other person who knew whether he committed murder." We disagree. The State's argument did not draw the jury's attention to the absence of evidence that *only appellant could produce. See Banks,* 643 S.W.2d at 134-35. Accordingly, we overrule the third point of error.

### COMMENT ON THE EVIDENCE

In his fourth point of error, appellant contends the trial court commented on the evidence by bolstering the credibility of Detective Beck, the chief investigator on the case. During the guilt-innocence phase of the trial, the State asked Detective Beck the purpose for handcuffing juveniles in the detention area. Appellant objected on the basis of speculation. The trial court responded, "Well, we are dealing with an experienced officer. I will let him testify to what he knows." On appeal, appellant complains the commment violated article 38.05 of the Texas Code of Criminal Procedure.

Article 38.05 provides:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is

-9-

> admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

Tex. Code Crim. Proc. Ann. art. 38.05 (Vernon 1979).

To preserve a complaint for appellate review, a party must make a timely, specific objection in the trial court. Tex. R. App. P. 52(a) (former rules); *See Burks v. State*, 876 S.W.2d 877, 899 (Tex. Crim. App. 1994), *cert. denied*, 513 U.S. 1114 (1995). This general rule also applies to complaints pursuant to article 38.05. *See Green v. State*, 912 S.W.2d 189, 192 (Tex. Crim. App. 1995), *cert. denied*, 116 S. Ct. 2556 (1996). In this case, appellant offered no objection once the trial court made its comments. Thus, he has waived any complaint.

With respect to appellant's complaint that the comment resulted in fundamental error, we disagree. Assuming the comment was error, we agree with the reasoning in *Moore v. State*, 907 S.W.2d 918 (Tex. App.-Hosuton [1st Dist.] 1995. pet. ref'd), and conclude appellant forfeited his right by not objecting. In *Moore*, the court held that the article 38.05 prohibition falls within that category of rights, as defined by *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), which are forfeitable by inaction. Because appellant failed to object at trial, he has forfeited any right to complain on appeal. We overrule the fourth point of error.

We affirm the trial court's judgment.

JOHN R. ROACH
JUSTICE

Do Not Publish
Tex. R. App. P. 90
960247F.U05

Case Number: 05-96-00247-CR    Date Filed: 02/12/96

Style: Zamarron, Jose Refugio
v.
Texas, The State of

---

APP  Blake Withrow
ATT 021830600
Attorney at Law
4923 West Lovers Lane
Dallas, TX 75209
Phone 214/358-3935
Fax

STA  Sue Korioth  DATED OFF: 08/18/97
ATT 011681975
Assistant District Attorney
Frank Crowley Courts Building
133 North Industrial Blvd., LB 40
Dallas, TX 75207
Phone 214/653-3829
Fax 215/653-3665

STA  Laura Greer Urbach
ATT 000790786
Assistant District Attorney
Frank Crowley Courts Building
133 N. Industrial Blvd., LB 19
Dallas, TX 75207-4399
Phone 214/653-3631
Fax