NO. 12-00-00150-CR


NO. 12-00-00151-CR





IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


TIMOTHY MIMS,
§
 APPEAL FROM THE 7TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

 The original opinion heretofore entered on August 9, 2001, is set aside and the same is hereby
withdrawn and the following original opinion is entered in lieu thereof, to wit:

 Timothy Mims ("Appellant") appeals his two convictions for aggravated assault. The two
cases were consolidated for trial. A jury returned a verdict of guilty, and assessed his punishment
at fifteen years of confinement and a $5,000.00 fine in each case. There was an affirmative finding
of a deadly weapon in each case. Appellant raises two issues on appeal. We affirm.


Background


 Erin Adams ("Erin"), age sixteen, met an old friend from Troup Junior High School, Grace
Starkey ("Grace"), who was nineteen. The two initially decided that Erin would spend the night with
Grace, but plans quickly changed after Grace decided to spend the night with her boyfriend,
Appellant. Grace arranged for Appellant's friend, Jarrod, to go out with Erin. During the course of
the evening, the four of them went to Grace's mother's house and drank alcohol, then went to a local
restaurant, where they argued with another group of youths. In the restaurant parking lot, Erin saw
an acquaintance of Appellant's give Appellant a pistol. The four then went to the home of a friend
of Appellant where Appellant argued with and choked a young man. After Appellant, Erin and
Grace cursed at the family, they were ordered to leave the house. Appellant drove down Grande
Boulevard in Tyler to the intersection of Old Jacksonville Highway where Appellant pulled in the
parking lot of a closed gas station. Appellant then yelled and cursed at a young man, Herbert "Ty"
Yarbrough ("Ty"). Appellant then "head-butted" Ty, causing his lip to bleed. Continuing to yell and
curse at Ty, Appellant brandished the gun and threatened to "kill everybody," including Ty, his
friend, and a couple using a pay phone. Appellant then got back in his vehicle and drove to his
house. 

 Once back at his trailer house, Appellant began to make sexual overtures toward Erin. 
Infuriated, Grace left the house. Erin was then alone with Appellant and Jarrod. Appellant
continued his unwanted overtures toward Erin, who continued to reject him, once even slapping him. 
They went outside, where Appellant sprayed Erin with a water hose and temporarily locked her out
of the house. Subsequently, Appellant took Erin to his car. Appellant told Erin to pray and that she
was going to die. Appellant then drove Erin to a nearby country road, forced her to get out of the
car and kneel down, put a gun to her head and said he was going to kill her. However, Appellant did
not kill Erin. Rather, he let her up and took her back to his house. At this point, Grace had returned
to Appellant's house and drove Erin home. 

 Appellant was charged with assaulting both Ty and Erin. The jury found Appellant guilty
of both charges of aggravated assault, and sentenced him to fifteen years in prison and a $5,000.00
fine in each case.

 Appellant raises two issues. (1) First, he contends the trial court erred in denying a motion for
mistrial. Second, he contends the evidence is legally and factually insufficient. 


Motion for Mistrial


 Appellant's first issue contends that the trial court erred in not granting his motion for
mistrial. During the State's redirect of Erin, Erin testified about her conversation with Grace as
Grace was taking her home. The State asked her what Grace told her. Erin said Grace was
encouraging Erin not to tell her father about Appellant pointing the gun at her because ". . . it was
no big deal and then she got into saying that Tim dealt cocaine." Appellant immediately objected. 

 In a conference at the bench, Appellant argued that the State had not provided the information
regarding allegations of drug delivery during discovery and asked for a mistrial based on the State's
failure to provide information. The State responded that the comment about dealing cocaine was
unexpected, and that they were trying to develop Erin's grand jury comments. 

 Appellant's trial attorney objected and asked the court for an instruction to the jury to
disregard the statement regarding Appellant dealing drugs. The court sustained Appellant's
objection and instructed the jury to disregard the statement. Appellant then moved for a mistrial,
which was denied.

 The issue before us is whether the trial court's instruction to disregard was sufficient to
overcome the impact of the witness's statement. Preserving error as to the admission of
objectionable evidence to a jury involves a three-step process: making an objection, requesting an
instruction to disregard, and finally, making a motion for mistrial. Cook v. State, 858, S.W.2d 467,
473 (Tex. Crim. App. 1993). When a litigant has received that relief which he has requested,
nothing is preserved on appeal. "Appellant must obtain an adverse ruling in order to preserve a
matter for review." Cook v. State, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993); Nethery v. State,
692 S.W.2d 686, 701 (Tex. Crim. App. 1985).

 Considering the use of an instruction to disregard, the Court of Criminal Appeals has stated:


 In the vast majority of cases in which . . . testimony comes in, deliberately or inadvertently, which has
no relevance to any material issue in the case and carries with it some definite potential for prejudice
to the accused, this Court has relied upon what amounts to an appellate presumption that an instruction
to disregard the evidence will be obeyed by the jury. In essence this court puts its faith in the jury's
ability, upon instruction, consciously to recognize the potential for prejudice, and then consciously to
discount the prejudice, if any, in its deliberations. Thus we say the harm deriving from the
unresponsive answer has been "cured." This is true except in extreme cases where it appears that the
evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest
the impossibility of withdrawing the impression produced on their minds.

Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), cert. denied, 529 U.S.1070, 120 S. Ct.
1680, 146 L. Ed. 2d 487 (2000), quoting Gardner v. State, 730 S.W.2d 675, 696 (Tex. Crim. App.
1987). Further, the jury is presumed, in the absence of evidence to the contrary, to have followed
the instruction to disregard, and to have not considered the statement for any purpose. Hinojosa v.
State, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999). A witness's inadvertent reference to an
extraneous offense is generally cured by a prompt instruction to disregard. Rojas v. State, 986
S.W.2d 241, 250 (Tex. Crim. App. 1998). 

 A mistrial is the appropriate remedy for the most egregious of testimonial errors. Wood v.
State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). The Court of Criminal Appeals has explained
the use of a mistrial as follows:


 A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure or
further time and expense would be wasteful and futile. Thus, a trial court may properly exercise its
discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction
could be reached but would have to be reversed on appeal due to an obvious procedural error. [citation
omitted]. The determination of whether a given error necessitates a mistrial must be made by
examining the particular facts of the case. [citation omitted]. The asking of an improper question will
seldom call for a mistrial, because, in most cases, any harm can be cured by an instruction to disregard.
[citation omitted]. A mistrial is required only when the improper question is clearly prejudicial to the
defendant and is of such character as to suggest the impossibility of withdrawing the impression
produced on the minds of the jurors. [citation omitted]. A trial court's denial of a mistrial is reviewed
under an abuse of discretion standard.



Ladd, 3 S.W.3d at 567.

 The statement which Appellant found objectionable was made during the State's presentation
of its evidence in chief through one of the victims. The State contended that the comment was
unexpected. The trial court gave the following instruction to the jury: 


 Ladies and Gentlemen of the Jury, the last statement of the witness had no place whatsoever in this
trial. It is not to be considered for any purpose whatsoever. It is to be wholly and completely
disregarded, never discussed. It has no place whatsoever in this trial at all, not for any purpose period.



The jury was then recessed, and a hearing was conducted on the statement concerning Appellant's
alleged cocaine delivery. The witness testified that she thought she may have told a policeman about
it, but could not remember specifically who she told. She further stated she did not tell anyone in
the District Attorney's office. The trial court noted that no officer had written any such comment
in any police report that it had been provided. The State's lead attorney testified that she had been
unaware of any such cocaine delivery prior to the witness's comment during trial. Further, she
testified that neither the witness nor any police officer involved in the case investigation had ever
mentioned to her anything about Appellant's alleged cocaine delivery during the State's preparation
for trial. The court reviewed on the record and followed the pattern of the trial court's jury
instruction to disregard which had been approved in Dickey v. State. 979 S.W.2d 825 (Tex.
App.-Houston [14th Dist.] 1998), rev'd on other grounds, Dickey v. State, 22 S.W.3d 490 (Tex.
Crim. App. 1999).

 When the jury returned, the Court again instructed them to disregard the witness's comment
stating:


 We are ready to proceed at this time, and Ladies and Gentlemen, I wanted to reenforce, reiterate the
instruction I gave you before we recessed. The witness'[sic] last answer had to do with the sale of
cocaine is to be disregarded totally. It is not to be considered for any purpose whatsoever. There is
no evidence here to support the witness'[sic] statement regarding that and so it has no purpose here;
and it is not to be discussed, not to be considered at all and is to be totally disregarded. Any questions
about that? If you do raise your hand. There are no hands raised. Everybody understands the
instructions, and I anticipate will follow those instructions.



 The statement by the witness was not in direct response to the prosecuting attorney's
question. The State's lead attorney testified that she was not expecting such a response, and was
unaware of such information. The witness was uncertain as to whether she had told anyone about
the cocaine delivery, but was sure that she had not given such information to the State's attorney. 
The trial court stated on the record that the statement was not included in the police reports. 
Appellant immediately objected. Appellant's objection was sustained. Appellant then requested a
motion to disregard. The trial court gave two extensive admonitions to the jury to disregard the
statement. Further, Appellant's motion for mistrial was denied. We conclude that the two
instructions to disregard were sufficient, in light of the statement of the witness and the Appellant's
and trial court's immediate and thorough response, to overcome any impact of the statement, and to
have "cured" any error. Thus, we hold that the trial court did not abuse its discretion in overruling
Appellant's motion for mistrial. Appellant's first issue is overruled.


Sufficiency of the Evidence


 In his second issue, Appellant complains that the evidence was legally and factually
insufficient. Analysis of the legal and factual sufficiency of the evidence adduced at trial and
considered by the jury are based on the following legal principles.

Legal Sufficiency

 In reviewing a legal sufficiency question, we must view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319,
99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Whitaker v. State, 977 S.W.2d 595, 598 (Tex. Crim.
App. 1998); Mason v. State, 905 S.W.2d 570, 574 (Tex. Crim. App. 1995). The trier of fact, here,
the jury, is the exclusive judge of the credibility of witnesses and of the weight to be given their
testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994); Williams v. State, 692
S.W.2d 671, 676 (Tex. Crim. App. 1984). The jury is entitled to draw reasonable inferences from
the evidence. Benavides v. State, 763 S.W.2d 587, 588-89 (Tex. App.-Corpus Christi 1988, pet.
ref'd). Likewise, reconciliation of conflicts in the evidence is within the exclusive province of the
jury. Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). Sufficiency of the evidence
is measured by the hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997).

 Under section 22.02 of the Texas Penal Code, a person commits the offense of aggravated
assault if the person:

. . .



 . . . commits assault as defined in Section 22.01 and the person:


 

. . .


 
 
 uses or exhibits a deadly weapon during the commission of the assault.

 
 


. . .


Tex. Pen. Code Ann. § 22.02(a)(1) (Vernon 1994).

 

 A person commits the offense of assault if the person:

 . . . 


 intentionally or knowingly threatens another with imminent bodily injury, including the
person's spouse;


. . . 


Tex. Pen. Code Ann.§ 22.01(a)(1) (Vernon Supp. 2001).

 The evidence before the jury, as related to the aggravated assault of Erin, was Erin's
testimony that Appellant drove her to a secluded area, told her to pray because she was about to die,
made her kneel down, threatened to kill her and put a pistol to her head. The evidence before the
jury, as related to the aggravated assault of Ty, was that Appellant saw him at a gas station and exited
his car, that Appellant verbally assaulted him, physically attacked him, brandished a pistol and
threatened to kill him. Appellant's trial attorney painted a starkly contrasting portrait of the events
of the night of the assaults through Appellant's witnesses, through his cross-examination of State's
witnesses, and by way of strong opening and closing arguments. However, when presented with
conflicting evidence, the jury, through their office as the judges of the facts and as evaluators of the
credibility of the witnesses, chose to believe the State's case over the Appellant's. 

 Viewing the evidence in the light most favorable to the verdict, we find that there was legally
sufficient evidence on which the jury, as the trier of fact, could have found the essential elements of
the crimes beyond a reasonable doubt. The testimony set forth above was legally sufficient to
support the conviction of Appellant. Therefore, Appellant's second issue as it relates to legal
sufficiency is overruled.

Factual Sufficiency

 Appellant further contends in his second issue that the evidence is factually insufficient to
support the charges of aggravated assault for which Appellant was convicted. When reviewing the
factual sufficiency of the evidence, we view all the evidence, but not in the light most favorable to
the prosecution. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). We set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). In conducting this
analysis, our duty is to examine the trier of fact's weighing of the evidence. Scott v. State, 934
S.W.2d 396, 398 (Tex. App.- Dallas 1996, no pet.). We consider all of the evidence in the record
related to an appellant's sufficiency challenge, comparing the weight of the evidence that tends to
prove guilt with the evidence that tends to disprove it. See Santellan v. State, 939 S.W.2d 155, 164
(Tex. Crim. App. 1997). Because we consider all of the evidence in conducting a factual sufficiency
review, we necessarily consider any reasonable alternative hypotheses raised by the evidence. Ates 
v. State, 21 S.W.3d 384, 391 (Tex. App.-Tyler 2000, no pet.); Richardson v. State, 973 S.W.2d 384,
387 (Tex. App.-Dallas 1998, no pet.). However, the mere existence of a reasonable alternative
hypothesis does not render the evidence factually insufficient. Ates, 21 S.W.3d at 391; Richardson,
973 S.W.2d at 387.

 Because the jury is the sole judge of the facts, we must give deference to jury findings. Cain,
958 S.W.2d at 407. What weight to give contradictory testimonial evidence is within the sole
province of the jury, because it turns on an evaluation of credibility and demeanor. Id. at 408-09. 
We are not free to re-weigh the evidence and set aside a jury verdict merely because we feel that a
different result is more reasonable. Id. at 407. We cannot reverse the verdict if reasonable minds
could differ about the conclusions to be drawn from the evidence. Richardson, 973 S.W.2d at 387. 
We find the evidence factually insufficient only where necessary to prevent manifest injustice. Cain,
958 S.W.2d at 407. A decision is not manifestly unjust merely because the jury resolved conflicting
views in favor of the State. Id. at 410.

 Although we must give deference to jury findings because the jury is the sole judge of the
facts, absolute deference is not the standard. Johnson v. State, 23 S.W.3d 1, 8 (Tex. Crim. App.
2000); Cain, 958 S.W.2d at 407. The degree of deference we give to jury findings must be
proportionate with the facts which we can accurately glean from the trial record. Johnson, 23
S.W.3d at 8. Our factual sufficiency analysis can consider only those few matters bearing on
credibility that can be fully determined from the cold appellate record. Unless the appellate record
before us reveals that a different result is appropriate, we must defer to the jury's determination
concerning what weight to give contradictory testimonial evidence because resolution often turns
on an evaluation of credibility and demeanor, and the jury was in attendance when the testimony was
delivered. Id. We then accord this evidence appropriate consideration in the context of our overall
analysis. Id. at 8-9. A factual sufficiency review encompasses the formulations used in both civil
and criminal cases. Id. at 11. This means that the evidence can be factually insufficient if (1) it is
so weak as to be clearly wrong and manifestly unjust, or (2) the adverse finding is against the great
weight and preponderance of the available evidence. Id. The Court of Criminal Appeals in Johnson
further states:


 . . . [T]he complete and correct standard a reviewing court must follow to conduct a Clewis factual
sufficiency review of the elements of a criminal offense asks whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak
as to undermine confidence in the jury's determination, or the proof of guilt, although adequate taken
alone, is greatly outweighed by contrary proof.



Johnson, 23 S.W.3d at 11.

 Applying the law to the facts in the present case, we cannot say the verdict is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust. The jury heard the
evidence in both the State's case and Appellant's case. The State's case included several witnesses
to Appellant's aggravated assault on Ty Yarbrough, and one witness, Erin, the victim, about the
aggravated assault on her. 

 Appellant called several witnesses who testified about the evening and whose testimony
could be perceived as discrediting some of the State's witnesses. However, the jury chose to believe
the State's witnesses. The jury witnessed the demeanor and testimony of the witnesses and were able
to assess the credibility of the witnesses far better than a reviewing court depending solely on the
cold record. Therefore, we hold there was factually sufficient evidence to support the verdict and
to support the jury's finding of each of the aggravated assault. The portion of Appellant's second
issue, regarding the factual sufficiency of the evidence, is overruled.

 Having found no reversible error, we affirm Appellant's conviction.


 SAM GRIFFITH 

 Justice




Opinion delivered August 10, 2001.

Panel consisted of, Worthen, J. and Griffith, J.

Davis, C.J., not participating







(PUBLISH / DO NOT PUBLISH)
1. Issue two is multifarious, containing two distinct issues. "A multifarious point is one that embraces more
than one specific ground. [citation omitted] While we may disregard them and refuse to review multifarious points of
error, we may elect to consider them if we are able to determine, with reasonable certainty, the alleged error about
which the complaint is made." Stults v. State, 23 S.W.3d 198, 205 (Tex. App.-Houston [14th Dist.] 2000, pet.
ref'd). In the interest of justice, each sub-issue will be addressed.