MEMORANDUM OPINION



No. 04-06-00384-CR



Apolonio CASTILLO, Jr.,


Appellant



v.



The STATE of Texas,


Appellee



From the 399th Judicial District Court, Bexar County, Texas


Trial Court No. 1999-CR-4519


Honorable Juanita A. Vasquez-Gardner, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Catherine Stone, Justice

 Karen Angelini, Justice

 Steven C. Hilbig, Justice


Delivered and Filed: June 20, 2007 


AFFIRMED

 

 Apolonio Castillo, Jr. ("Castillo") appeals from his conviction for aggravated sexual assault
of a child and brings six issues on appeal: (1) the trial court erred in permitting Anita Castillo to
testify as the outcry witness and in denying Castillo the right to confront Velia, who was the first
adult the child victim reported the assault to; (2) the State improperly designated an outcry witness
in its notice; 3) the trial court erred in allowing "an unqualified witness" to testify; 4) the trial court
erred in allowing the State to improperly bolster its witnesses; 5) the trial court erred in failing to
determine, prior to testimony, that the child victim understood the nature of the oath to tell the truth;
and, 6) the evidence is factually insufficient to sustain a judgment against Castillo. We affirm the
judgment of the trial court. (1)

Factual and Procedural Background


 Castillo was charged with the offense of aggravated sexual assault of a child and indecency
with a child by sexual contact. The alleged victim was Castillo's daughter, C.C., who was fourteen
years old at the time of trial and eleven years of age at the time of the offense. 

 At trial, Anita Castillo, the spouse and mother, testified that she first learned C.C. had been
abused from her eldest daughter, Velia, in whom C.C. confided in March of 1998. (2) Velia
immediately told Anita; however, when Anita confronted C.C., C.C. refused to discuss the matter,
but was observed behaving differently and crying a lot. Several months later, C.C. finally told Anita
the details of the alleged assault. Specifically, C.C. stated that Castillo was in his bedroom in his
underwear and asked her to bring him a glass of water. When C.C. returned with the water, Castillo
reportedly told her to take off her clothes. He then forced her to get on top of him and "she felt it go
in a little bit." At this point, C.C. hit Castillo on the chest and ran to the bathroom. Anita testified
that when C.C. told her about the abuse, C.C. was crying and very upset. C.C. also told her, "Mom,
I feel dirty," "my life has changed," and "I'm not a little girl no more." Anita called the police to
report the abuse the next day. Anita testified that she did not call the police when Velia first told her
because she wanted C.C. to tell her what had happened and knew that if the police came before C.C.
was ready to talk, that she would not say anything.

 Castillo was subsequently found guilty of aggravated sexual assault of a child and was
sentenced to twenty-five years confinement.


 I. Improper Hearsay/Outcry Witness


 In his first two issues, Castillo complains that (1) the State improperly designated Anita as
the outcry witness in its notice and (2)"[t]he trial court abused its discretion when it allowed the
admission of improper hearsay, which denied [Castillo] of his right of confrontation." Specifically,
Castillo claims that Velia, and not Anita, was the proper outcry witness; therefore, Anita's testimony
regarding what C.C. told her was hearsay. Further, Castillo claims he was denied the opportunity to
cross-examine and confront Velia, who was unavailable on the day of trial.

 However, the record reflects that on November 2, 1999, the State served opposing counsel
with its "Notice of Intent to Present Outcry Statement" pursuant to article 38.072 of the Texas Code
of Criminal Procedure. (3) See Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon 2005). Attached
thereto was a narrative summary of Anita's statement, wherein Anita states that Velia told her that
C.C. had confided to Velia that Castillo had sexually assaulted C.C. However, the summary also
provides that Velia told Anita that C.C. did not go into details about the assault, started crying and
became hysterical when Velia asked C.C. about the incident, and that C.C. later told Anita the details
of the assault. Further, when the State was examining Anita regarding what C.C. had told her,
Castillo's counsel objected to the question because it was leading and called for hearsay. The State
responded that an outcry notice had been filed designating Anita as the outcry witness and therefore,
any statement in response was admissible notwithstanding the hearsay rule. See Tex. Code Crim.
Proc. Ann. art. 38.072 §2(b) (Vernon 2005). No other objection was made. 

 Initially, we note that Castillo's hearsay trial objection does not comport with the issues
raised on appeal that he was denied his right of confrontation and that the State improperly
designated Anita, rather than Velia, as the outcry witness. See Penry v. State, 903 S.W.2d 715, 763
(Tex. Crim. App. 1995)(holding that to preserve error for appeal, trial objection must comport with
issue raised on appeal). Moreover, to preserve error, "a party must object each time the inadmissible
evidence is offered or obtain a running objection. See Tex. R. App. P. 33.1(a)(1); id. An error in the
admission of evidence is cured where the same evidence comes in elsewhere without objection."
Valle v. State, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); Penry, 903 S.W.2d at 763. 

 In the present case, Castillo objected initially based on hearsay but did not otherwise object
to the State's designation of Anita as the outcry witness, or request a hearing pursuant to article
38.072 §2(b)(2); thus, Castillo cannot now complain that the trial court abused its discretion in
admitting C.C.'s outcry statement through C.C.'s mother, Anita, rather than her sister, Velia. Tex.
Code Crim. Proc. Ann. art. 38.072 §2(b)(2) (Vernon 2005); Penry, 903 S.W.2d at 763; see also
Tex. R. App. P. 33.1(a)(1). Additionally, the record reflects that Anita testified that Velia was having
gallstone surgery and would not be available to testify; however, Castillo's trial counsel failed to
seek a continuance or in any way advise the trial court that he wished to call Velia as a witness. See
Tex. R. App. P. 33.1(a)(1); see also Holland v. State, 802 S.W.2d 696, 699 (Tex. Crim. App. 1991)
(defendant must make a proper and timely objection at trial to preserve a claim on appeal that the
defendant was denied his constitutional right to confront the out-of-court declarant). Castillo likewise
failed to advise the trial court that he believed his right to confront Velia was being denied by her
absence at trial. See id. 

 Accordingly, we overrule Castillo's first two issues. 

II. Unqualified Witness


 Next, Castillo argues that the trial court erred in allowing Betty Urbanczyk, the registered
Sexual Assault Nurse Examiner ("SANE"), to testify. Castillo asserts that Nurse Urbanczyk "might
only have been qualified to come in and testify, on a limited basis, to her observances during the
sexual assault exam, relevant to the physical issues surrounding sexual assault, but nothing more."
Specifically, Castillo complains that Ms. Urbanczyk was permitted to inform the jury that her
examination of C.C. revealed a healed cleft tear which indicated prior penetration. Castillo asserts
that this testimony was objected to. We disagree. 

 The record reflects that Ms. Urbanczyk was called as a witness and proceeded to testify
regarding the events. When asked by the State what the victim told her about the crime, the
following exchange took place: 

THE STATE: Well, if you could refresh your memory from your
notes and then once you're done refreshing, just let us
know. Actually, it's in evidence so yes, you can. You
can.

MR. DOMINGUEZ: Your Honor, I'm going to object to any statements
that are written in this document made by [C.C.] to
the -- to Ms. --

WITNESS: Urbanczyk.

MR. DOMINGUEZ: Urbanczyk as hearsay statements, Your Honor. I'm
going to object to them.

THE STATE: One, Your Honor, it's already been admitted into
evidence, that's an objection that needed to be made
at the time of the admission; but two, it's a hearsay
exception in that it's a statement made for purposes of
medical diagnosis which is an exception under 803.4
of the Code of Criminal Evidence.

THE COURT: It's overruled.


 Thus, Castillo's trial counsel only objected to statements contained in the document reflecting
what C.C. told Ms. Urbanczyk. See Penry, 903 S.W.2d at 763. This objection was properly overruled
since the medical records had previously been admitted into evidence as a hearsay exception
pursuant to Texas Rule of Evidence 803(4). See Tex. R. Evid. 803(4)(providing that statements
made for purposes of medical diagnosis or treatment are not excluded by the hearsay rule). And
while Castillo previously objected to the introduction of these medical records, Castillo's objection
that the records were not originals was properly overruled. 

 Accordingly, we overrule this issue. Id.

III. Bolstering of Witnesses


 Castillo next asserts that the State was allowed to engage in the improper bolstering of its
witnesses and specifically points to testimony by Jevi Rodriguez, an investigator for the Department
of Protective Services. The witness testified that after the reported abuse, she contacted Anita and
C.C. and based on her interviews, she determined that the allegations had merit. No objections to
Ms. Rodriguez's testimony appear in the record. Tex. R. App. P. 33.1(a)(1).

 We overrule Castillo's issue.

IV. Witness's Truthfulness


 Castillo further complains that "[t]he trial court abused its discretion in failing to determine,
prior to testimony, that the complainant understood the nature of the oath to tell the truth and her
duty and obligation to tell the truth."

 As a general rule, every person is competent to be a witness. See Tex. R. Evid. 601.
However, Rule 601 further provides that children or other persons who, after being examined by the
court, appear not to possess sufficient intellect to relate transactions with respect to which they are
interrogated, shall be incompetent to testify. Id. We review a trial court's ruling on whether a child
is competent to testify for an abuse of discretion. See Broussard v. State, 910 S.W.2d 952, 960 (Tex.
Crim. App.1995). However, to preserve a complaint for review on appeal, a party must timely and
specifically object in the trial court and secure an adverse ruling. See Tex. R. App. P. 33.1; see also
Loredo v. State, 159 S.W.3d 920, 923 (Tex. Crim. App. 2004). 

 Here, the record reflects that the trial judge determined that C.C. was fourteen years old at
the time of trial. Additionally, since the rule had been invoked, the trial judge made sure C.C.
understood that she could not discuss her testimony with other witnesses or be in the courtroom
while another witness was testifying. C.C. indicated several times that she understood the judge's
instructions. Based on this interaction with the fourteen-year-old witness, as well as her observations
of C.C.'s responses and demeanor, the trial judge could have properly found C.C. competent to
testify. Moreover, Castillo does not direct this court, nor has our review of the record found, any
objection in the record by Castillo regarding the competency of C.C.'s testimony or the lack of an
adequate determination by the trial judge. See id. 

 Accordingly, we overrule this issue.

V. Factual Insufficiency

 Finally, Castillo argues that the evidence was factually insufficient to support the jury's
finding that he sexually assaulted C.C. Specifically, Castillo maintains that there was insufficient
evidence of penetration.

 In a factual sufficiency review, we view all of the evidence in a neutral light and will set the
verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust,
or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not
have been met. Prible v. State, 175 S.W.3d 724, 730-31 (Tex. Crim. App.), cert. denied, 126 S. Ct.
481 (2005). A verdict is clearly wrong and unjust if the "jury's finding is 'manifestly unjust,' 'shocks
the conscience,' or 'clearly demonstrates bias.'" Id. (quoting Santellan v. State, 939 S.W.2d 155,
164 (Tex. Crim. App. 1997)). In conducting this review, we may not substitute our determination
for that of the fact finder. See Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996); Scott
v. State, 934 S.W.2d 396, 399 (Tex. App.--Dallas 1996, no pet.). Instead, we defer to the jury's
determination concerning what weight to give contradictory testimony. Johnson v. State, 23 S.W.3d
1, 9 (Tex. Crim. App. 2000).

 Castillo argues that the only evidence of penetration came from hearsay statements by Anita, 
who learned the details of the assault from Velia, not C.C., and Nurse Urbanczyk. Nevertheless,
Urbanczyk testified that C.C. told her Castillo called her into his bedroom, got her down on her back,
took his pants and underwear off, and then "[t]ried to get his thing in there all the way" and "got it
in halfway." This comports with what C.C. told Anita on a separate occasion. Castillo also maintains
that Urbanczyk's testimony that she observed evidence of penetration during her examination of
C.C., along with the fact that C.C. told her that she had been sexually assaulted by Castillo, conflict
with C.C.'s testimony on cross that she engaged in digital self-penetration. However, although 
Castillo's trial counsel asked Urbanczyk on cross examination if the evidence of the healed cleft
could have been caused by the insertion of fingers, he didn't specify whether he was referring to
digital penetration by an adult or by a child. When Urbanczyk responded affirmatively, Castillo's
counsel then inquired "whether it would be reasonable to assume or to -- to conclude that a man --
a grown man inserting his penis into [C.C.] would cause perhaps a -- larger tear" to C.C.'s hymen
to which Urbanczyk answered, "[n]ot necessarily." Castillo also argues that Anita and Castillo were
in the midst of a divorce, and that Anita delayed in reporting the incident initially, and then allegedly
informed her divorce attorney before contacting anyone else. However, this argument is unsupported
by the record. See Tex. R. App. P. 38.1(h). Finally, Castillo states that he was allowed to continue
living at the home, was given consent by Anita to have continued contact with C.C. and, in fact, went
to Fiesta Texas with C.C. after the reported incident. 

 After viewing all the evidence before us in a neutral light, we conclude that there is factually
sufficient evidence of penetration to support the jury's finding of aggravated sexual assault. See
Prible, 175 S.W.3d at 730-31; Vernon v. State, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992)
(holding penetration occurs where the contact is more intrusive than contact with the outer labia and
even the slightest penetration of the female sexual organ is sufficient to prove penetration); Sherbert
v. State, 531 S.W.2d 636, 637 (Tex. Crim. App. 1976). 

 We overrule Castillo's final issue.

Conclusion


 We affirm the trial court's judgment.


 Karen Angelini, Justice

Do Not Publish



1. An appeal was previously filed in cause number 04-06-00235-CR; however, because it was not timely
filed, it was dismissed for lack of jurisdiction. Thereafter, the Texas Court of Criminal Appeals granted Castillo an
out-of-time appeal and pursuant to the mandate issued, the trial court subsequently certified Castillo's right of
appeal. On June 7, 2006, Castillo filed a second notice of appeal which this court now has jurisdiction to review. 
2. Anita and Castillo were married twice and were in the process of obtaining their second divorce when the
incident at issue took place. They had two children, C.C., the alleged victim, and D.C.,their youngest child, who was
eleven years old at the time of trial. Prior to her relationship and marriages to Castillo, Anita also had two other
children, a daughter named Velia, who was twenty-nine years old at the time of trial, and a son named Jerry, who was
twenty-seven years old at the time of trial.
3. The trial took place in January of 2001.